**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-12631

Non-Argument Calendar

————————————

JULIA HAGANS,

    Mother of Plaintiffs' decedent, Rufus Lee,
    as surviving parents and one of several next of kin;
    In a representative capacity for the now deceased father,
    and next of kin; In a representative capacity as a putative
    personal representative of the estate of Rufus Lee,

*Plaintiff-Appellant,*

SOLOMON LEE, SR.,

    and his heirs and next of kin, the adult siblings of Rufus Lee,
    namely Solomon Lee, Jr., Henry Lee,
    Quaneisha Tribble and Janeisha Page,

*Plaintiff,*

*versus*

TIMOTHY WARD,

    Commissioner, Georgia Department of Corrections,
    individually, as a policy maker and as a supervisor
    acting under color of state law,

BROOKS BENTON,

Warden, Coastal State Prison, individually, as a policy
maker and as a supervisor acting under color of state law,
MICHAEL ANDERSON,
   Deputy Warden, Security, Coastal State Prison, individually,
   as a policy maker and as a supervisor,
   acting under color of state law,
CARL BETTERSON,
   Deputy Warden Care and Treatment Coastal State Prison,
   individually, as a policy maker and as a supervisor
   acting under color of state law,
PHILLIP GLENN,
   Deputy Warden Administration, Coastal State Prison, individually,
   as a policy maker and as a supervisor
   acting under color of state law, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:23-cv-00352-RSB-CLR

_____

Before JORDAN, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Rufus Lee, an inmate at Coastal State Prison, was murdered in his prison cell by four other inmates. His family members brought various claims against certain officials with authority over Coastal State Prison and against the unnamed supervisors and correctional officers on duty the night Lee was killed. The district court dismissed the claims against both the named and unnamed defendants, notwithstanding the plaintiffs' request that they be allowed to conduct discovery to learn the identities of the

unnamed defendants.  After careful consideration of the plaintiffs' appeal, we reverse the dismissal of the Eighth Amendment claims against both the named and unnamed defendants and affirm the dismissal of the denial of access claim against all defendants.

## I.    Background[1]

This case arises from the death of Rufus Lee, an inmate at Coastal State Prison in Chatham County, Georgia.  The plaintiffs include Julia Hagans (Lee's mother), as Lee's next of kin and representative of his estate; the estate of Solomon Lee, Sr. (Lee's father), now deceased and also represented by Hagans; and Lee's adult siblings, as his next of kin.  They sued five named defendants who were "upper managers" of Coastal State prison—Timothy Ward, the Georgia Department of Corrections (GDOC) commissioner; Brooks Benton, the Coastal State Prison warden; and Michael Anderson, Carl Betterson, and Phillip Glenn, deputy wardens at Coastal State Prison (the named defendants).  They also listed as defendants unnamed prison supervisors and correctional officers at Coastal State Prison.

On December 14, 2021, four inmates at Coastal State Prison entered Lee's cell and "beat and stabbed him with a knife-like weapon," causing his death.  According to the complaint, these inmates were able to access Lee's housing unit and cell because it was not secure, and they used a shank created from "contraband

---

[1] At the motion-to-dismiss stage, we accept the facts in the complaint as true. *West v. Warden, Comm'r, Alabama DOC*, 869 F.3d 1289, 1296 (11th Cir. 2017).

equipment" stolen while on a work detail.  The four inmates who killed Lee are now under indictment for their actions.

The complaint alleged that the named defendants knew of these dangerous conditions at Coastal State Prison: they were aware of a "high number of assaults" in which inmates used weapons that "were coming in through work crews and other means," and they knew that security was not being maintained between various housing units and cells, allowing inmates to assault other inmates "out of [their] assigned location."  It also alleged that the named defendants knew that because of staffing shortages, guards were not supervising objects that could be turned into weapons, "allow[ing] inmates on work details to steal and purloin metal objects from work detail."  According to the complaint, short staffing and inmate-on-inmate violence were common problems across all GDOC facilities.

The complaint also alleged a number of failures by the unnamed supervisors and correctional officers: that they were "turning a blind eye to inmates stealing metal objects that could be used to make shanks and knives"; that they were "not conducting cell searches as frequently as directed . . . , allowing inmates to anticipate cell searches and hide weapons in other cells or to hide weapons if searched"; that they were aware of inmates "in locations in or around the housing area when they should not be there," but "did not take reasonable and required action" in response; and that they "saw the assault" on Lee and either "did not have sufficient staff to respond" or "refused to intervene."

Before filing this lawsuit, the plaintiffs attempted to obtain documents related to Lee's death by filing a request pursuant to the Georgia Open Records Act.  They were denied access to most of the documents they requested, due to the ongoing investigation and prosecution of the inmates who caused Lee's death.

The plaintiffs filed this suit in December 2023.  The complaint listed three causes of action: Claim I for denial of access to the courts due to the inability to obtain documents from various state entities; Claim II for Lee's pain and suffering caused by the defendants in violation of the Eighth Amendment; and Claim III for Lee's wrongful death caused by the defendants' deliberate indifference.

The named defendants moved to dismiss the claims against them, and the plaintiffs responded, but they also moved for discovery to identify the unnamed supervisor and correctional officer defendants and requested a stay of the motion to dismiss pending that discovery.  The magistrate judge denied the plaintiffs' motion as moot, concluding that the Federal Rules of Civil Procedure governed discovery, requiring parties to confer and begin discovery by a certain deadline, and that that deadline had already passed, so the parties did not need special permission to conduct discovery.[2]  The defendants then requested a stay of

---

[2] The district court affirmed this decision, finding that it was not clearly erroneous and did not fail to follow applicable law.

discovery pending the resolution of the motion to dismiss, and the magistrate judge granted the motion.[3]

The district court then granted the motion to dismiss the claims against the named defendants. It concluded that Claim I was "not a cause of action for deprivation of Constitutional rights against any named Defendant." As for Claim II, the court found that the plaintiffs failed to establish an objectively, sufficiently serious risk of injury to Lee because they made only generalized allegations of dangerous conditions across all GDOC prisons, rather than alleging a history of violence and dangerous conditions at Coastal State Prison specifically. The court also concluded that the plaintiffs had not sufficiently alleged that the named defendants were subjectively aware of the risk based on the dangerous conditions. The court analyzed Claim III as a state tort claim for wrongful death and dismissed it, finding that the named defendants were all entitled to immunity because they were acting in the scope of their employment.[4]

---

[3] When the district court granted the motion to dismiss, it concluded that the magistrate judge's decision to stay discovery was not clearly erroneous or contrary to law, and it dismissed the plaintiffs' appeal of the stay as moot.

[4] The named defendants suggest in their response brief on appeal that the plaintiffs have waived any appeal of this dismissal by failing to raise it in their opening brief. In reply, the plaintiffs clarify that Claim III alleged an additional Eighth Amendment deliberate indifference claim rather than a state tort claim. They explain that Claim II asserts constitutional violations related to Lee's "pre-death pain and suffering," brought by his estate, while Claim III asserts the same violations related to Lee's death, brought by his next of kin. While we accept the plaintiffs' explanation of Claim III for the purposes of our Eighth

The district court also ordered the plaintiffs to show cause why the unnamed defendants should not be dismissed. The court ultimately concluded that the plaintiffs had not demonstrated that they had adequately described the unnamed defendants in the complaint, and it dismissed the claims against the unnamed defendants.

This appeal followed.

## II.    Standard of Review

We review the grant of a motion to dismiss *de novo*, "accept[ing] as true the facts as set forth in the complaint and draw[ing] all reasonable inferences in the plaintiff's favor." *West v. Warden, Comm'r, Alabama DOC*, 869 F.3d 1289, 1296 (11th Cir. 2017) (quotations omitted). The allegations in the complaint must "set out facts sufficient to raise a right to relief above the speculative level" and to "allow[] the court to draw the reasonable inference that the defendants were liable for the misconduct." *Lane v. Philbin*, 835 F.3d 1302, 1305 (11th Cir. 2016) (alterations adopted) (quotations omitted).

## III.    Discussion

---

Amendment analysis, we do not reach, for the first time on appeal, the question of whether the plaintiffs may bring Eighth Amendment claims as Lee's next of kin, independent of his estate. To the extent the complaint did raise state law claims, the plaintiffs have waived any appeal of their dismissal. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (issues not argued on appeal are abandoned).

### A.     Dismissal of the Eighth Amendment claims against Ward, Benton, Anderson, Betterson, and Glenn

The plaintiffs contend that the district court erred in dismissing their Eighth Amendment claims because they alleged facts plausibly giving rise to such claims against the named defendants. The defendants argue that dismissal was appropriate because the complaint fails to allege that Lee was subject to a substantial risk of serious harm.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). While "prison officials have a duty to protect prisoners from violence at the hands of other prisoners," constitutional liability does not result from every injury suffered by an inmate at the hands of another. *Id.* at 833–34 (omission adopted) (quotations omitted). A prison official may be held liable only when the plaintiff has "suffered a deprivation that was, objectively, sufficiently serious" and when the plaintiff shows "the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (*en banc*) (quotations omitted). Even then, the defendant is not liable if he "responded reasonably to the risk." *Id.* (quotations omitted). Finally, the plaintiff must show that the defendant's deliberate indifference caused the plaintiff's injury. *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (per curiam).

Because supervisory officials are not vicariously liable under § 1983 for their subordinates' unconstitutional acts, a plaintiff "must show that the supervisor either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). "The necessary causal connection can be established when a history of widespread abuse puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Id.* (quotations omitted). Such deprivations must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* (quotations omitted).

To plausibly allege an objectively "substantial risk of serious harm" pursuant to the first element, the plaintiffs must allege "conditions that were extreme and posed an unreasonable risk of serious injury to [Lee's] future health or safety." *Lane*, 835 F.3d at 1307. While "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, . . . confinement in a prison where violence and terror reign is actionable." *Id.* Thus, in *Lane* we concluded that a complaint "sufficiently set out a substantial risk of serious harm" when it "alleged that there were 'numerous stabbings and beatings,' that 'only one officer supervised two separate 50-man dorms,'" that inmates "would bring back items from their work on the maintenance detail, and take materials from light fixtures and shelves, to make weapons," and that "despite searches by prison

officials, weapons were not confiscated." *Id.* at 1307–08 (alterations adopted).

While the plaintiffs' complaint provides sparse detail, it does plausibly allege that Lee faced a substantial risk of serious harm at Coastal State Prison. The complaint alleges that the named defendants were aware and were in possession of evidence demonstrating "a high number of assaults, that weapons were coming in through work crews and other means and were being used in assaults," that there were "a high number of assaults by inmates out of [their] assigned location," and that these assaults were facilitated by the "lock security of housing units and cells . . . not being maintained." It also alleges that the named defendants "were aware of the substantial risk of harm created by the chronic shortage of correctional officers, which allowed inmates on work details to steal and purloin metal objects from work detail, because there were insufficient guards to oversee the safe control of objects that could be turned into weapons. It further alleged that the staffing shortage left the "housing unit door and sally port security . . . at substantial risk of causing preventable assaults" based on "frequent assaults involving instances where lock security was breached at the housing unit level and cell level." And it alleged that the staffing shortage meant that "there were insufficient guards to oversee and prevent intruders from harming those in the housing unit" and to "timely respon[d]" to assaults that were taking place. These allegations, which closely mirror those in *Lane*, are sufficient to show that Lee faced a substantial risk of serious harm at Coastal State Prison. *See id.* at 1307–08.

The district court concluded that the plaintiffs had failed to allege a substantial risk of serious harm because "most of Plaintiffs' allegations of 'chronic' understaffing relate not to Coastal State Prison, but to the Georgia Department of Corrections generally." The court dismissed other allegations recited above because it believed that it was unclear whether "these speculative allegations relate to [the] conditions at GDOC prisons, generally, or at Coastal State Prison, specifically." The named defendants reiterate this argument on appeal, insisting that "[t]he complaint contains no fact allegations indicating that Coastal State Prison was understaffed in December 2021; that inmates at Coastal State Prison had access to shanks due to understaffing; or that prior inmate-on-inmate attacks occurred at Coastal State Prison." But both the district court and the named defendants read the complaint too narrowly.

It is true that if the complaint's allegations about understaffing, frequent inmate assaults, and other dangerous conditions consisted only of statements about GDOC prisons generally, they would be insufficient to allege a substantial risk of harm to Lee at Coastal State Prison. We reject the plaintiffs' attempts to rely on their assertions about staffing shortages and violence in GDOC facilities generally.[5] But while a few of the complaint's allegations explicitly discuss staffing shortages and corresponding violence across all GDOC facilities, the allegations

---

[5] Nor may the plaintiffs amend their complaint by bolstering it with factual assertions made only in briefs. *See Miccosukee Tribe of Indians of Fla. v. U.S.*, 716 F.3d 535, 559 (11th Cir. 2013).

recited above are reasonably understood to refer to conditions at Coastal State Prison, particularly when we "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff," as we must at the motion-to-dismiss stage. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). Thus the named defendants' argument to the contrary fails.

The second element—whether the defendant was deliberately indifferent to the risk of harm—is a subjective inquiry. *Wade*, 106 F.4th at 1262. Under it, we consider whether the plaintiff has alleged that (1) "the [defendant] was subjectively aware that the inmate was at risk of serious harm," (2) "the [defendant] disregarded that risk," and (3) "the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1255. The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also draw the inference." *Marbury*, 936 F.3d at 1233 (omission adopted) (quotation omitted).

Here, the plaintiffs claim that the named defendants were deliberately indifferent to a general lack of safety at Coastal State Prison rather than to a specific threat to Lee's safety. When plaintiffs' deliberate indifference claim relies on a generalized risk of harm, they "must show that serious inmate-on-inmate violence was the norm or something close to it." *Id.* at 1234 (quotations omitted). So, for example, we held in *Marbury* that there was insufficient evidence of pervasive, serious inmate-on-inmate violence when Marbury pointed only to his sworn declaration that

he personally witnessed fifteen stabbings which potentially occurred over the course of six years. *Id.* And in *Harrison v. Culliver*, we held that a prison official was not deliberately indifferent to a substantial risk of serious harm to the plaintiff when only 33 assaults with weapons occurred in the entire prison in the four years leading up to the assault on the plaintiff, only four of which occurred in the area of the prison where the plaintiff was assaulted. 746 F.3d 1288, 1299–1300 (11th Cir. 2014).

Many of the same allegations relevant to our discussion of the objective prong also assert that the named defendants were aware of the dangerous conditions that led to Lee's assault. The complaint alleges that the named defendants "were aware of a high number of assaults, that weapons were coming in through work crews and other means and were being used in assaults," that there were "a high number of assaults by inmates out of [their] assigned location," and that "lock security of housing units and cells was not being maintained causing high assaults." It alleges that the named defendants "knew that housing unit door and sally port security [were] at substantial risk of causing preventable assaults from the frequent assaults involving instances where lock security was breached at the housing unit level and cell level." In other words, the complaint alleges that assaults were a common occurrence at Coastal State Prison, and that the same factors that allegedly led to Lee's murder—staff shortages, weapons being transported into the facilities by work crews, and the failure to maintain security between individual housing units and cells—were also responsible for the previous assaults.

We recognize that these allegations are not as specific as those we rejected in *Marbury* (fifteen stabbings in six years) and in *Harrison* (thirty-three assaults in a large prison over four years). But those cases arose at the summary-judgment stage, where we consider whether the record evidence would allow "a rational trier of fact to find for the nonmoving party." *Harrison*, 746 F.3d at 1298; *see Marbury*, 936 F.3d at 1232. Certainly, the allegations in this complaint, without more, would not meet the summary judgment standard. But at the motion-to-dismiss stage, we consider only whether the complaint has "set out facts sufficient to raise a right to relief above the speculative level"—to "allow[] the court to draw the reasonable inference that the defendants were liable for the misconduct." *Lane*, 835 F.3d at 1305 (alterations adopted) (quotations omitted). The allegations in this complaint meet that lower standard of plausibility.[6]

---

[6] The district court concluded that the plaintiffs had not met the subjective prong because they relied on the defendants' "job functions as supervisors to infer their knowledge of the dangerous conditions." But, as discussed above, the complaint, read in the light most favorable to the plaintiffs, plausibly alleges that the named defendants were aware of the alleged dangerous conditions at Coastal State Prison and knew that those conditions led to inmates assaulting other inmates. It does not assert that the named defendants *should have known* of the risk based on their supervisory positions. It rather asserts that the named defendants *"were aware* of a high number of assaults" resulting from contraband weapons and lax security measures; that they *"were aware* of the substantial risk of harm created by the chronic shortage of correctional officers"; and that they *"were aware* that the correctional officer shortage created a substantial risk of danger" due to the "inability to conduct" "sufficient," "frequen[t] . . . cell searches for weapons."

Finally, the complaint plausibly alleges that the named defendants' deliberate indifference caused Lee's death. It asserts that the dangerous conditions of which the named defendants were allegedly aware—the staffing shortages, the weapons entering the prison through work crews, and the lack of security between housing units and cell blocks—caused the attack on Lee by allowing the inmates who assaulted him to access his housing area and cell while armed with weapons and to complete the assault before any officer could intervene.

Thus the district court erred in dismissing the Eighth Amendment deliberate indifference claims against the named defendants.[7]

### B.    Dismissal of the "denial of access" claim

The plaintiffs argue that they adequately alleged a denial of access to the courts claim pursuant to *Christopher v. Harbury*, 536 U.S. 403 (2002). The district court dismissed the plaintiffs' Claim I on the grounds that it was "not a cause of action for deprivation of Constitutional rights against any named Defendant."

*Christopher v. Harbury* affirmed that a plaintiff could bring a claim for denial of access to the courts (1) when "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing

---

[7] Because the district court dismissed the claims against the unnamed defendants based on improper fictional party pleading rather than on the merits of the claims against them, we do not analyze whether the complaint plausibly alleges an Eighth Amendment claim against the unnamed defendants.

suits at the present time" (in order to "place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed") and (2) when cases "cannot now be tried . . . , no matter what official action may be in the future" (such as when a government coverup extended past the statute of limitations for a particular cause of action). *Id.* at 413–14. Because the right of access to the courts is "ancillary" to a "separate and distinct right to seek judicial relief for some wrong," a plaintiff bringing such a claim must identify the underlying cause of action along with the "official acts frustrating the litigation." *Id.* at 415.

The named defendants argue that this claim was properly dismissed because it did not identify a cause of action aside from asserting that it sought to "preserve the right to meaningful access to the courts" under the First, Seventh, and Fourteenth Amendments. But the Supreme Court has recognized that its decisions recognizing a right of access claim have variously grounded that right in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause. *See Christopher*, 536 U.S. at 415 n.12 (collecting cases). And the plaintiffs clarified in their opposition to the motion to dismiss that this claim arose from their right to access to the courts pursuant to *Christopher*. In any event, "under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

But the plaintiffs' denial of access claim fails for a different reason. While they allege that they have "tried to get information . . . by using the Georgia [Open] [R]ecords Act," and that "the GBI, Departme[n]t of Corrections and the DA's office of Chatham County" have "prevent[ed] disclosure of such documents," they have not named any of these three entities as defendants, nor have they alleged that any of the named defendants were involved in blocking their requests for information. So the plaintiffs have failed to plausibly allege that the named defendants "were liable for this misconduct," and the district court did not err in dismissing this claim. *Lane*, 835 F.3d at 1305.[8]

C.    *Dismissal of the claims against the unnamed defendants*

Next, the plaintiffs argue that the district court erred when it dismissed the claims against the unnamed defendants.

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). We allow plaintiffs, however, to sue "real parties . . . under a fictitious name" in cases where they can "describe an individual . . . without stating his name precisely or correctly." *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992) (quotations omitted) (allowing joinder of an unnamed defendant where the complaint sufficiently identified the defendant as the supervisory official at the jail where the incident occurred and

---

[8] Because the plaintiffs have not alleged that any of the unnamed defendants were responsible for blocking their access to information, we also affirm the dismissal of this claim against the unnamed defendants.

discovery would provide the information needed to identify that defendant). In *Dean*, we relied on two factors to determine that the plaintiff's fictitious party pleading was appropriate: discovery "would have provided [the plaintiff] with the information needed to specifically name" the unnamed defendant, and the plaintiff's description in the complaint "was sufficiently clear to allow service of process." *Id.* at 1216.

In this case, the plaintiffs have not described the unnamed defendants with "sufficient clarity" to allow for service of process on them. *Id.* The complaint lists two categories of Doe defendants: "Defendant Supervisor John and Jane Does, . . . as de facto policy makers and as a supervisor acting under color of state law," and "Defendant Frontline correctional officer John and Jane Does, . . . as de facto supervisors and policy makers, acting under color of state law." Under the complaint's Eighth Amendment claim, it asserts that "one or more of the frontline correctional officers and their officer supervisors, whose names are not known[,] were deliberately indifferent" to the risk of harm to Lee. In the alternative, the complaint alleges that the unknown supervisors and frontline officers were deliberately indifferent to various facts that indicated Lee was at risk of bodily injury. Aside from these allegations, the complaint describes the unnamed frontline officers merely as "guards on duty preceding the attack on [Lee]." The complaint does not "adequately describe[] the person[s] to be sued so that [they] could be identified for service." *Id.* at 1215 n.6.

The plaintiffs have demonstrated, however, that discovery would have allowed them to learn the identities of the unnamed defendants. *See id.* at 1216 (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), as an example of a case "allowing use of [an] unnamed defendant where it was clear that discovery would uncover [the] defendant's identity"). The plaintiffs' complaint alleged that they had already attempted to identify the unnamed officers through an open records request. And in their opposition to the motion dismiss, they related that, in response to their request, they had received pages of the logbook from the relevant day, but that the names of the officers on duty were redacted. They attached as an exhibit those redacted pages, demonstrating the likelihood that the unredacted version of the logbook would provide the names of the officers in question. Because the plaintiffs have identified the unnamed defendants as those whose names are redacted in the logbook, they have shown that discovery will almost certainly allow them to identify those individuals.[9] For this

---

[9] The defendants argue that we have "never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity" (quoting *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020). But *Vielma*, which is an unpublished opinion and thus is not binding on us, *Stephens v. DeGiovanni*, 852 F.3d 1298, 1327 n.31 (11th Cir. 2017), noted that the likelihood that discovery would identify the defendant was "a relevant consideration," and declined to decide "whether there is a 'discovery' exception to the general rule against fictitious-party pleading." *Vielma*, 808 F. App'x at 881. Instead, the court pointed out that the plaintiffs had not sought discovery and had "repeatedly agreed to stay discovery." *Id.*

Not so here, where the plaintiffs have made every attempt to learn the identity of the unnamed defendants both before bringing this suit and prior to the

reason, the district court erred when it dismissed the unnamed defendants. *Cf. Brown v. Sikes*, 212 F.3d 1205, 1209 n.4 (11th Cir. 2000) (observing that "[a]ppellate courts have acknowledged the difficulties faced by a prisoner in identifying alleged wrongdoers before filing a complaint and have directed district courts to assist prisoners in discovering the identity of the proper defendants").

### D.    Stay of discovery pending the motion to dismiss

Finally, the district court did not abuse its discretion when it failed to allow the plaintiffs to conduct discovery before it decided the motion to dismiss. "[D]istrict courts enjoy broad discretion in deciding how best to manage the cases before them," and "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366–67 (11th Cir. 1997). And the plaintiffs did not renew their request for discovery when the court ordered them to show cause why the unnamed defendants should not be dismissed. *Cf. id.* (suggesting that "[r]esolution of a pretrial motion that turns on findings of fact . . . may require some limited discovery before a meaningful ruling can be made"). Thus the plaintiffs' argument that discovery should have been allowed prior to the dismissal of their complaint fails.

---

motion to dismiss. We also do not conclude that every plaintiff who asserts that discovery will *likely* allow him to identify unnamed defendants can avoid dismissal of those unnamed parties. But the unique discovery posture of this case certainly permits the John Doe pleading.

## IV.    Conclusion

For these reasons, we affirm in part and reverse in part the district court's dismissal of the plaintiffs' claims.

**AFFIRMED IN PART AND REVERSED IN PART.**